**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| |
|---|
| **NIZAR ZAKKA,**<br>        **Plaintiff,**<br><br>**v.**<br><br>**THE CINCINNATI INSURANCE**<br>**COMPANY,**<br>        **Defendant.** |

**C. A. No. 1:25cv1544-MSN-IDD**

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, The Cincinnati Insurance Company ("Cincinnati"), by and through its undersigned counsel, Horst Krekstein & Runyon LLC, and Setliff Law, P.C., submits this Brief in Support of its Motion for Summary Judgment, consistent with Federal Rule of Civil Procedure 56 and Local Rule 56.

**I.      INTRODUCTION**

This case concerns Plaintiff's demand for almost $1 million in new money after Cincinnati already paid $965,785.09 for covered repairs to Plaintiff's dwelling, damaged personal property, and additional living expenses following a residential explosion loss.  Plaintiff also alleges bad faith.

It is undisputed that Cincinnati paid all amounts owed under the Policy for covered damage to Plaintiff's dwelling and personal property and paid all additional living expenses due under the Policy. Plaintiff's remaining claims do not create a triable issue of fact. The additional dwelling claim is based on alleged defective work by Plaintiff's own contractor, and the Policy specifically excludes damage caused by defective construction and faulty workmanship. Plaintiff's additional personal property claim is based on paintings that were discarded before Cincinnati could inspect

1

them and furniture that was not identified until long after the contents inventory was completed, and for which Plaintiff no evidence that the damage was caused by the explosion. Plaintiff's claim for additional living expenses seeks payment beyond the time required to repair the Property as provided by the Policy.

Plaintiff's bad faith claim fails as a matter of law since Cincinnati paid all amounts due and owing under the Policy due to the explosion and reasonably relied on retained experts and consultants in doing so. The only amounts that Cincinnati did not pay are damages excluded by the Policy or outside the scope of coverage. Plaintiff cannot establish that Cincinnati breached the Policy, much less that Cincinnati denied benefits or refused payment without a reasonable basis.

Accordingly, Cincinnati respectfully requests that this Court grant summary judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Cincinnati submits this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment:

1.    Cincinnati issued homeowner policy No. H01 1076032 (the "Policy") to Plaintiff, Nizar Zakka ("Plaintiff"), which provided coverage for, *inter alia*, the property located at 7673 Charnick Road, Marshall, VA 20115 (the "Property"), personal property, and additional living expenses. *See* Exhibit A, Relevant Portions of Policy No. H01 1076032, DDH (6/17), p. 1 of 2; AQVA (6/17), pp. 8-9, 11 of 39; and HR1053QVA (12/20), p. 1 of 2.

2.    Plaintiff presented a claim to Cincinnati under the Policy following an explosion at the Property with a reported date of loss of September 16, 2023. *See* Plaintiff's Complaint (ECF No. 1), ¶ 5.

3.     Cincinnati retained engineer Douglas Miller, P.E. of YA Engineering Services ("Miller"), to opine on the cause and identify damage to the dwelling caused by the explosion. *See* Exhibit B, 10/20/23 YA Engineering Services Report. *See also* Exhibit C, 10/1/24 YA Engineering Services Report.

4.     Cincinnati also retained building consultant Joshua Kai of Young & Associates ("Kai") to determine the scope of repairs and prepare an estimate for the cost to repair damage caused by the explosion. *See* Exhibit D, Relevant Portions of Deposition Transcript of Joshua Kai, p. 19, line 20 – p. 20, line 17.

5.     Plaintiff hired Loudoun Construction as his general contractor to perform repairs to the Property following the explosion. *See* Exhibit E, Loudoun Construction Agreement.

6.     Based on Miller's report and the repair estimates prepared by Kai, Cincinnati issued payments to Plaintiff totaling $616,037.20 to repair covered damage to the Property. *See* Exhibit F, 6/2/25 Payment Summary from Cincinnati.

7.     Following Cincinnati's investigation of the remainder of the claim, including additional inspections, continued consideration by Miller and Kai, and use of Enservio to evaluate Plaintiff's personal property claim, Cincinnati issued additional payments to Plaintiff totaling $214,747.89 for covered repairs and replacement of damaged personal property and $135,000.00 for Plaintiff's additional living expenses. *Id.* [1]

8.     Though Plaintiff never specified the additional amounts he claimed prior to litigation, through responses to Interrogatories, Plaintiff confirmed that he was seeking an additional $601,295.72 under the Policy's Dwelling coverage, $178,400.00 under the Policy's Personal Property coverage, and $180,000.00 under the Policy's Additional Living Expense

---

[1] Exhibit F incorrectly incorporates one Additional Living Expense payment of $18,000.00 into the Personal Property coverage total.  The corrected totals are reflected in this Statement.

coverage. *See* Exhibit G, Plaintiff's Supplemental Responses to Defendant's First Set of Interrogatories, ¶¶ 2-3.

## Plaintiff's Additional Dwelling Claim

9.     Plaintiff's claim for additional dwelling damages is based on a February 25, 2025 Construction Defect Report ("Construction Defect Report") and estimate prepared on Plaintiff's behalf by Thomas Irmiter of Forensic Building Science ("Irmiter"). *See* Exhibit G at ¶¶ 1, 3, 5. See also Exhibit H, 2/25/26 Forensic Building Science Construction Defect Report.

10.     The estimate totals $601,295.72 for the cost of repairing the defective workmanship and faulty repairs by Plaintiff's contractor, Loudoun Construction. *See* Exhibit H at pp. 2, 44; Exhibit I, Deposition Transcript of Thomas Irmiter, p. 67, lines 15-24 and p. 76, lines 5-20; Exhibit J, 2/25/26 Forensic Building Science Estimate.

11.     The Policy excludes coverage for losses caused by faulty, inadequate, or defective workmanship, repair, or construction. *See* Exhibit A at AQVA (6/17), pp. 20-22 of 39.

12.     Irmiter prepared for Plaintiff a separate Explosion Damage Evaluation, dated September 3, 2025 (the "Explosion Damage Evaluation"), alleging that Cincinnati's building consultants, Young & Associates, did not account for the following repairs in their estimates:

a.   Matching hardwood floors;

b.   Complete replacement of the crawl space vapor barrier and insulation;

c.   Replacement of seven windows and five doors that were damaged by the explosion;

d.   Repairs to cracks in the foundation stem walls and stone veneer that were caused by the explosion;

e.   Replacement of water-damaged sheathing and framing in areas where siding was removed; and

4

    f.   Incorporation of house wrap into the window and door frames and installation of sill pan flashing.

*See* Exhibit K, 9/3/25 Forensic Building Science Explosion Damage Evaluation, pp. 8-9.

13.     Based on Young & Associates' estimates, Cincinnati paid for full removal and replacement of hardwood flooring within the main section of the house. *See* Exhibit L, 2/29/24 Young & Associates Estimate, p. 5. *See also* Exhibit I, p. 49, line 5 – p. 50, line 5.

14.     Based on Young & Associates' estimates, Cincinnati paid for full removal and replacement of the vapor barrier and insulation within the Property's crawl space. *See* Exhibit H, pp. 6-7. *See also* Exhibit I, p. 68, line 23 – p. 69, line 4.

15.     The Explosion Damage Evaluation does not provide any testing, measurements, or engineering analysis supporting any basis for concluding that any damage to windows and doors or the foundation was caused by the explosion. *See* Exhibit K.

16.     The cracks observed in the foundation stem walls and stone veneer were caused by long-term foundation settlement. *See* Exhibit M, 6/16/26 Supplemental YA Group Report, p. 6. *See also* Exhibit B at p. 3.

17.     The Policy excludes coverage for losses caused by settling, including resultant cracking of foundations. *See* Exhibit A at AQVA (6/17), pp. 20-21 of 39.

18.     Water damage to the wooden sheathing and framing in areas where siding was removed was caused by deterioration as a result of long-term moisture exposure. *See* Exhibit C, at p. 3.

19.     The Policy excludes coverage for losses caused by deterioration. *See* Exhibit A at AQVA (6/17), pp. 20-21 of 39.

20. Incorporation of the house wrap into the window and door frames and installation of sill pan flashing was not required to repair damage caused by the explosion. *See* Exhibit M at pp. 3-4. *See also* Exhibit D at p. 49, line 14 – p. 50, line 2.

### Plaintiff's Additional Personal Property Claim

21. Plaintiff claims $178,400.00 in additional damaged personal property, comprised of $127,600.00 for paintings and $50,800.00 for additional furniture. *See* Exhibit G, at ¶¶ 2-3.

22. The Policy requires Plaintiff to exhibit damaged property as often as Cincinnati reasonably requires. *See* Exhibit A at AQVA (6/17), pp. 23-24 of 39.

23. Plaintiff discarded the paintings before Cincinnati had an opportunity to inspect them, thereby preventing Cincinnati from determining whether they were damaged due to the explosion. *See* Exhibit N, Deposition Transcript of Nizar Zakka, p. 85, lines 16-18.

24. Cincinnati retained Enservio to perform an assessment of damaged contents, which was completed on March 12, 2024. *See* Exhibit O, 5/6/25 Letter from Cincinnati, p. 1. *See also* Exhibit P, 6/2/25 Letter from Cincinnati, p. 3.

25. On April 14, 2025, eighteen months after the date of loss and twelve months after completion of the Enservio contents assessment, Plaintiff identified additional furniture that he claimed was damaged by the explosion, but never presented it to Enservio. *See* Exhibit Q, 4/14/25 Email from Nizar Zakka.

26. Despite Cincinnati's requests, Plaintiff never provided information regarding the pre-loss condition of the allegedly damaged furniture. *See* Exhibit O.

### Plaintiff's Additional Living Expense Claim

27.     When a covered loss makes the Property uninhabitable, the Policy provides Additional Living Expense coverage for the shortest time period required to repair or replace the premises. *See* Exhibit A at HR1053QVA (12/20), p. 1 of 2.

28.     Plaintiff's own contractor, Loudoun Construction, identified June 7, 2024 as the anticipated date of substantial completion on which Plaintiff could resume occupying the Property. *See* Exhibit R, 3/18/24 Email from Cincinnati. *See also* Exhibit P, at pp. 2-3.

29.     Following the loss, Cincinnati paid Additional Living Expenses of $18,000 per month to house Plaintiff in a rental property while the Property was repaired. *See* Exhibit N at p. 87, lines 7-25.

30.     Plaintiff placed unreasonable restrictions on Loudoun Construction's activities (including requiring that interior repairs not be started until completion of exterior repairs), unnecessarily delayed in making material selections, and unreasonably refused to sign a change order, which delayed the completion of repairs beyond June 7, 2024. *See* Exhibit N at p. 51, line 6 – p. 52, line 21 and p. 54, line 19 – p. 55, line 25. *See also* Exhibit S, 6/7/24 Email from Nizar Zakka. See also Exhibit T, Deposition Transcript of Joshua Whirley, p. 48, line 6 – p. 50, line 13 and p. 57, lines 10-21.

31.     Cincinnati did not make additional living expense payments after June 2024, consistent with the information provided by Plaintiff's own contractor as to when the repairs should have been substantially completed and its obligations under the Policy. *See* Exhibit R, 3/18/24 Email from Cincinnati. *See also* Exhibit P, at pp. 2-3.

## III.    ARGUMENT

### A.  STANDARD OF REVIEW

Summary judgment is particularly appropriate where, as here, the non-moving party bears the burden of proof and fails to produce evidence sufficient to establish an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a).

Plaintiff cannot avoid summary judgment by relying on unsupported allegations or factual disputes that are not material to whether Cincinnati owed additional benefits under the Policy. The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment; the dispute must be both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material only if it might affect the outcome of the suit under the governing law. *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022).

Because the undisputed record demonstrates that Cincinnati paid all covered amounts and that Plaintiff's remaining demands are excluded, unsupported, or not recoverable under the Policy, no genuine issue of material fact remains for trial and Cincinnati is entitled to summary judgment as a matter of law.

**B. CINCINNATI IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S BREACH OF CONTRACT BECAUSE CINCINNATI SATISFIED ITS OBLIGATIONS UNDER THE POLICY.**

Plaintiff alleges that Cincinnati breached the Policy by failing to pay for all covered damage to the Property. *See* Plaintiff's Complaint (ECF No. 1) at ¶ 18. Under Virginia law, plaintiffs asserting a claim for breach of contract must prove: "(1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of that obligation, and (3) resulting injury or harm to the plaintiff." *Irving v. PAE Gov't Servs*, 249 F. Supp. 3d 826, 837 (E.D. Va. 2017). For the reasons articulated below, it is undisputed that Cincinnati paid all covered amounts owed under the Policy. Plaintiff is, therefore, unable to demonstrate that Cincinnati breached the Policy.

Accordingly, Cincinnati is entitled to summary judgment as a matter of law on Count One of Plaintiff's Complaint for breach of contract.

### 1. Cincinnati has paid all amounts owed under the Policy's Dwelling Coverage.

Plaintiff's claim for additional dwelling coverage fails because Plaintiff cannot identify any unpaid covered damage to the Property. Plaintiff's claimed building damages are based on the Construction Defect Report and, although Plaintiff has not relied on it to date, the separate Explosion Damage Evaluation. Neither report establishes that Cincinnati failed to pay for covered damage caused by the explosion. Instead, Plaintiff's claimed dwelling damages are excluded under the Policy, already paid by Cincinnati, unsupported by admissible evidence, or otherwise outside the scope of coverage.

#### a. *The Forensic Building Science Construction Defect Report addresses only excluded damages.*

Plaintiff's claim for additional dwelling coverage is based on the Construction Defect Report and estimate for $601,295.72. *See* Exhibit G at ¶¶ 1, 3-5, 7. *See also* Exhibit H. Plaintiff's own expert, Thomas Irmiter of Forensic Building Science ("Irmiter"), confirmed that the Construction Defect Report addresses only the cost of correcting defective repairs performed by Plaintiff's own contractor, Loudoun Construction. *See* Exhibit I, p. 67, lines 15-24. Irmiter stated that his estimate "reflects the cost to repair the defective workmanship allegedly performed by Loudoun Construction." *See* Exhibit I, p. 76, lines 5-20.

The Policy expressly excludes "physical loss" caused by faulty, inadequate, or defective workmanship, repair, construction, renovation, and remodeling. *See* Exhibit A at AQVA (6/17), pp. 20-21 of 39. This exclusion is valid and enforceable and excludes coverage for the cost of correcting defective construction. *See, e.g., Nat'l Hous. Bldg. Corp. v. Acordia of Va. Ins. Agency,*

*Inc.*, 267 Va. 247 (2004). Virginia courts have recognized that claims for repair of defective construction do not even constitute a direct physical loss and, as such, are not subject to coverage. *See Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d 612, 615-616 (E.D. Va. 1999).

Here, the Policy contains a defective construction exclusion, and Plaintiff's own expert confirmed that the Construction Defect Report only addresses the cost to correct Loudoun Construction's defective repairs. Those claimed damages are excluded under the Policy and cannot support Plaintiff's breach of contract claim. Accordingly, no genuine issue of material fact exists with respect to Plaintiff's claim for $601,295.72 in additional dwelling coverage and Cincinnati is, therefore, entitled to summary judgment.

### b. *All items identified by the Forensic Building Science Explosion Damage Evaluation have been paid, are unsupported, or are otherwise excluded.*

Plaintiff has not identified the Explosion Damage Evaluation (the "Evaluation") in support for his claim for additional dwelling coverage. *See* Exhibit G, ¶¶ 2-3. Accordingly, Plaintiff should not be permitted to now recast his claim following the close of discovery. However, even if Court considers it, the Evaluation does not create a genuine issue of material fact because the items identified in that report have been paid by Cincinnati, are unsupported by admissible evidence, or are otherwise excluded under the Policy.

### i. *Cincinnati paid to replace all hardwood flooring.*

Irmiter contends that Young & Associates did not provide for matching the new flooring to the existing flooring. *See* Exhibit K at p. 8. However, Young & Associates accounted for full removal and replacement of all hardwood floors in the main section of the house and the breezeways at a total cost of $32,465.17. *See* Exhibit L, pp. 4-25, 55. Irmiter candidly admitted that if Young & Associates had included replacement of all hardwood floors, his opinion was no longer valid. *See* Exhibit I, p. 49, line 24 – p. 50, line 7. Indeed, Irmiter testified that Young &

10

Associates may have already provided for full replacement of the flooring. *See* Exhibit I at p. 49, line 5 – p. 50, line 5. Because it is undisputed that Cincinnati paid to replace the hardwood flooring, no genuine issue of material fact exists with respect to this category of damages.

      ii.   *Cincinnati paid to replace the insulation and vapor barrier in the Property's crawl space.*

Irmiter claimed that Young & Associates' estimates failed to provide for full replacement of the crawl space insulation and vapor barrier. *See* Exhibit K at p. 9. However, in his deposition Irmiter admitted that Young & Associates already provided for full replacement of the insulation and vapor barrier and that his opinion was in error. *See* Exhibit H at pp. 6-7; Exhibit I at p. 68, line 23 – p. 69, line 4. Because Cincinnati paid to replace the insulation and vapor barrier, no genuine issue of material fact exists with respect to these damages.

      iii.   *Plaintiff's claims of damage to windows and doors are unsupported by admissible expert testimony.*

Plaintiff has not presented evidence that any window or door was damaged by the explosion. Irmiter contends that Young & Associates failed to address seven windows and five exterior doors that were allegedly damaged by the explosion. *See* Exhibit K at p. 8. However, the Evaluation does not identify the location of the windows or doors at issue and does not provide testing, measurements, engineering analysis, or any other reliable basis to connect the claimed damage to the explosion. *See* Exhibit K. Irmiter concedes that no consideration was given to determining the strength of the explosion, a fact which he agrees would be relevant to his analysis. *See* Exhibit I, p. 30, lines 13-15, p. 44, line 13 – p. 45, line 16. At best, Irmiter testified that the observed conditions were "consistent with" an explosion. *See* Exhibit I at p. 42, lines 8-23; p. 55,

lines 1-7; and p. 56, lines 8-12. Irmiter conceded that "consistency" does not establish causation. *Id.*, p. 41, lines 15-19.

Fed. R. Evid. 702 requires expert testimony to be based on sufficient facts or data, reliable principles and methods, and a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702. The trial court acts as the gatekeeper of proffered expert opinion testimony, ensuring that the evidence is reliable and relevant. *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993). To ensure reliability, the Court must consider whether the testimony is based on scientific, technical, or other specialized knowledge and not on belief or speculation. *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 1007 (4th Cir. 2020). Failure of an expert to articulate reliable principles or methods in support of an opinion renders the opinion unreliable and excludable under Fed. R. Evid. 702. *Andrews v. Woody*, 2018 U.S. Dist. LEXIS 91593 at *8, 11-16 (E.D. Va. May 31, 2018).

Irmiter's opinion does not satisfy Rule 702.[2] Irmiter, who is not a licensed engineer, testified that calculating the magnitude of the blast is relevant to assessing whether an explosion could have caused damage to a property, yet performed no such calculation. *See* Exhibit I at p. 26, lines 12-13; p. 30, lines 1-15; p. 38, lines 19-21; and p. 39, lines 14-19. Critically, Irmiter admitted that he has not articulated any scientific method linking the claimed damage to the explosion. *Id.* at p. 44, lines 13-16. Because Irmiter did not identify any reliable principle or method supporting his opinion that the windows and doors were damaged by the explosion, that opinion is inadmissible under Fed. R. Evid. 702. *Andrews*, 2018 U.S. Dist. LEXIS 91593 at *8, 11-16; *McKiver*, 980 F.3d at 1007; Fed. R. Evid. 702.

---

[2] Concurrent with this Motion, Cincinnati is also filing a Motion to Preclude Irmiter's Opinions, which is incorporated by reference.

On summary judgment, the Court may consider only evidence that can be presented in admissible form at trial. *Humphreys & Partners Architects v. Lessard Design, Inc.*, 790 F.3d 532, 538-39 (4th Cir. 2015). Irmiter's unsupported causation opinion would not be admissible in any form. Without admissible evidence that any window or door was damaged by the explosion, Plaintiff cannot support these alleged damages.

> iv. <u>Cracks within the foundation walls and stone veneer were caused by settling, which is an excluded cause of loss.</u>

Irmiter claims that Young & Associates failed to address cracking in the foundation walls and stone veneer. *See* Exhibit K at p. 8. Plaintiff, however, has presented no evidence that such cracking was caused by the explosion. Cincinnati's engineer, Miller, concluded that the cracks were the result of long-term differential foundation movement, not the explosion. *See* Exhibit M at p. 6. That conclusion is supported by Miller's October 2023 inspection, during which he observed cobwebs and debris in the stone veneer cracks, indicating that the cracks predated the explosion. *See* Exhibit B at p. 3.

Irmiter's statement is not only unsupported; it also contradicts the basic principles of blast-force attenuation. As Miller explained, "[t]he peak pressure of an explosion rapidly attenuates with distance from the source of the blast." *See* Exhibit M at pp. 6-7. Irmiter failed to explain how an explosion originating in the crawlspace under the southcentral region of the main house could have caused seven of the nine reported cracks in the CMU stem walls under the north corridor and north wing, while causing no cracks in the CMU stem walls immediately adjacent to the explosion origin. *Id.* Miller further explained that, if the explosion were strong enough to crack the foundation stem wall in the north corridor and wing, "obvious damage and/or displacement of the more fragile interior finishes would be expected directly above the cracked CMU," yet no damage

13

to the wood flooring, drywall, trim, or other lighter materials directly above the reported cracked stem wall locations was observed. *Id.*

In response to Miller's conclusions, Irmiter offers only speculation. He testified that the explosion was in the crawl space, the cracks looked fresh, and "it certainly looked bad when we were there, so we attributed that to the explosion itself." *See* Exhibit I at p. 62, lines 2-10. Irmiter did not provide any scientific reasoning, engineering analysis, or reliable methodology to support that conclusion. *See* Exhibit M at pp. 6-7. Because Irmiter failed to identify any reliable principle or method supporting his opinion, his opinion as to the cause of the cracks in the foundation and stone veneer is inadmissible under Fed. R. Evid. 702. *Andrews*, 2018 U.S. Dist. LEXIS 91593 at *8, 11-16; Fed. R. Evid. 702. Again, this inadmissible opinion should not be considered in opposition to Cincinnati's motion for summary judgment. *Humphreys & Partners Architects*, 790 F.3d at 538-39.

The Policy excludes "physical loss" caused by settling, including resultant cracking of foundations and walls. *See* Exhibit A at AQVA (6/17), p. 21 of 39. Interpreting a similar exclusion, this Court concluded that "settling" and "cracking" are excluded when caused by ordinary swelling, expansion, or settling. *Sentinel Assoc. v. American Mfrs. Mut. Ins. Co.*, 804 F. Supp. 815, 819 (E.D. Va. 1992). With no admissible opinion to the contrary, the undisputed evidence establishes that the cracks were caused by long-term foundation movement and are excluded under the Policy. *See* Exhibit A at AQVA (6/17), p. 21 of 39; *see also* Exhibit M at pp. 6-7. Accordingly, no genuine issue of material fact exists with respect to this category of damages.

> v. *Water damage to sheathing and framing was caused by deterioration, which is an excluded cause of loss.*

Irmiter contends that Young & Associates failed to provide for replacement of water-damaged sheathing and framing. *See* Exhibit K at p. 8. There is no dispute that the water damage

14

was not caused by the explosion. *See* Exhibit I, p. 60, line 24 – p. 61, line 1 (confirming it is not Irmiter's opinion that the water damage was caused by the explosion). Rather, the areas of deteriorated sheathing were the result of prolonged moisture exposure. *See* Exhibit C, at p. 3. The Policy excludes damage caused by deterioration. *See* Exhibit A at AQVA (6/17), p. 21 of 39. Damage caused by long-term moisture exposure, as evidenced by stained sheathing, is properly excluded. *Clinton v. Allstate Vehicle and Prop. Ins. Co.*, 2022 U.S. Dist. LEXIS 178935 *32-34 (W.D. Va. Sept. 30, 2022).  Accordingly, no genuine issue of material fact exists with respect to this category of damages.

vi. *Installation of house wrap into the window and door frames and installation of sill pan flashing was not required to complete repairs.*

Finally, Irmiter claims that Young & Associates failed to provide for installation of the replacement house wrap into the undamaged window and door frames and did not include sill pan flashing. *See* Exhibit K at p. 8. The undisputed record confirms that these items were not required to repair damage caused by the explosion.

Young's estimate provided for removal and replacement of fiber cement siding, siding trim, and house wrap on the affected elevations. *See* Exhibit L at pp. 48, 55. Young did not include removal and replacement of any windows or doors because no explosion-caused damage to the windows or doors had been observed or even reported at the time Young prepared its estimate. *See* Exhibit M at pp. 3-4. As Miller explained, if a window or door had been damaged by the explosion and its removal and replacement had been included in Young's estimate, then re-flashing around that window or door would also have been included. *Id.* But that is not what occurred here. The windows and doors were not damaged by the explosion, and their detachment, resetting, and re-flashing were not required to repair covered explosion damage. *Id.*; *see also* Exhibit D at p. 49, line 14 – p. 50, line 2.

Irmiter's claim rests on installation instructions that do not apply to the conditions at the dwelling. Irmiter relied on instructions for installing Tyvek® IntegrationWrap™ and FlexWrap™ at rough openings <u>before</u> windows are installed. *See* Exhibit M at p. 3. Those instructions assume either new construction or an existing building in which Tyvek's proprietary flashing system has been installed around the rough opening before the window is installed and the adjacent wall sheathing is bare. *Id.* That is not the case here as the dwelling had existing windows and doors, existing house wrap and flashing, and intact siding at the time Young inspected the Property. *Id.,* at pp. 3-4. Accordingly, the installation instructions relied on by Irmiter do not require detachment, resetting, or re-flashing of every window and door as part of the explosion-related siding repairs. *Id.*

Cincinnati paid for the siding and house wrap repairs made necessary by the explosion. Accordingly, no genuine issue of material fact exists with respect to this category of damages.

### 2. Cincinnati has paid all amounts owed under the Policy's Personal Property Coverage.

Plaintiff claims additional damage to personal property in the amount of $178,400.00, including $127,600.00 for allegedly damaged paintings and $50,800.00 for allegedly damaged furniture. *See* Exhibit G at ¶¶ 2-3. This claim fails because Plaintiff cannot establish an unpaid covered loss under the Policy.

The Policy's Personal Property coverage requires direct "physical loss" to Covered Property caused by or resulting from a Covered Cause of Loss. *See* Exhibit A at AQVA (6/17), pp. 9, 20 of 39. The Policy requires Plaintiff to cooperate with Cincinnati's investigation, prepare an inventory of damaged personal property showing the quantity, description, actual cash value, and amount of physical loss, attach documents that justify the figures in the inventory, and exhibit the damaged property as often as Cincinnati reasonably requires. *See* Exhibit A at AQVA (6/17), pp.

16

23-24 of 39. Plaintiff has not satisfied those requirements with respect to the paintings or furniture claimed as additional Personal Property damage.

### a. *Plaintiff failed to exhibit the paintings for inspection by Cincinnati.*

Plaintiff claims damage to eight paintings that were discarded before Cincinnati had an opportunity to inspect them. *See* Exhibit N at p. 85, lines 16-18. By discarding the paintings, Plaintiff prevented Cincinnati from determining whether the paintings existed, whether Plaintiff owned them, their value, their pre-loss condition, and, critically, whether they were damaged by the explosion. *See* Exhibit P, at p. 3.

Plaintiff's actions are fatal to the claim for the paintings. The Policy required Plaintiff to cooperate in Cincinnati's investigation and exhibit damaged property as often as Cincinnati reasonably required. *See* Exhibit A at AQVA (6/17), pp. 23-24 of 39. Additionally, as recognized in *Powell v. United States Fidelity & Guaranty Co.*, 855 F. Supp. 858, 860-62 (E.D. Va. 1994), a policyholder is also statutorily required to exhibit the damaged property to its insurer, among other duties, under Virginia Code § 38.2-2105. Consistent with *Powell*, Plaintiff's failure to comply with these duties by discarding the damaged paintings without first allowing Cincinnati to inspect them violates his duty to cooperate and justifies denial of the claim. *Id*.

Cincinnati's inspection of the paintings was necessary to evaluate ownership, value, condition, and causation. Plaintiff's failure to preserve the paintings deprived Cincinnati of that opportunity and prejudiced Cincinnati's investigation. Accordingly, Cincinnati properly denied Plaintiff's claim for additional Personal Property coverage for the paintings.

### b. *Plaintiff has not shown that the claimed furniture damage was caused by the explosion.*

Plaintiff also seeks $50,800.00 for allegedly damaged furniture. *See* Exhibit G at ¶¶ 2-3. However, Plaintiff did not identify the furniture until long after Cincinnati's contents investigation

had been completed and still has not provided evidence establishing that the claimed damage was caused by the explosion.

Following the loss, Cincinnati retained Enservio to assess Plaintiff's damaged personal property. That assessment was completed on March 12, 2024. *See* Exhibit P, at p. 3. Plaintiff did not identify the additional furniture claim until April 14, 2025, eighteen (18) months after the date of loss and more than twelve (12) months after completion of the Enservio contents assessment. *See* Exhibit Q. Cincinnati then requested additional proof of ownership of, and damage to, the claimed furniture. *See* Exhibit O at pp. 1-2. Plaintiff did not provide evidence establishing the pre-loss condition of the furniture or showing that the claimed damage was caused by the explosion. *See* Exhibit O.

That failure matters because the Policy does not provide coverage merely because Plaintiff later identified furniture and assigned a value to it. The Policy's Personal Property coverage applies only to direct "physical loss" to Covered Property caused by or resulting from a Covered Cause of Loss. *See* Exhibit A at AQVA (6/17), pp. 9, 20 of 39. Plaintiff therefore must prove that the furniture sustained direct "physical loss" to Covered Property during the Policy period and that the amount claimed is owed under the Policy. *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 757 F. App'x 229, 234-35 (4th Cir. 2018) (recognizing that all-risk coverage applies only to direct physical loss and that the insured bears the initial burden to show the claim falls within the scope of coverage).

Nor did Plaintiff comply with the Policy's requirements for presenting and supporting a personal property claim. The Policy requires Plaintiff to cooperate with Cincinnati's investigation, prepare an inventory of damaged personal property showing the quantity, description, "actual cash value," and amount of "physical loss," attach documents that justify the figures in the inventory,

18

and exhibit the damaged property as often as Cincinnati reasonably requires. *See* Exhibit A at AQVA (6/17), pp. 23-24 of 39. Plaintiff's belated identification of additional furniture, without evidence of pre-loss condition or any information tying the claimed damage to the loss presented to Cincinnati, did not provide Cincinnati with the information reasonably required to evaluate the claim. *See Powell v. United States Fid. & Guar. Co.*, 855 F. Supp. 858, 860-62 (E.D. Va. 1994).

Accordingly, Plaintiff cannot establish that Cincinnati breached the Policy by declining to pay additional Personal Property benefits for the furniture. There is no genuine issue of material fact with respect to Plaintiff's claim for additional Personal Property coverage.

### 3. Cincinnati has paid all amounts owed under the Policy's Additional Living Expense Coverage.

Plaintiff seeks an additional 10 months of Additional Living Expense coverage, totaling $180,000. *See* Exhibit G at ¶ 3. That claim fails because the Policy limits Additional Living Expense coverage to the shortest time period required to repair or replace the premises, not the date Plaintiff chose to resume full-time occupancy. *See* Exhibit A at HR1053QVA (12/20), p. 1 of 2.

The Policy provides that, if a covered physical loss makes the residence premises uninhabitable, Cincinnati will pay the necessary increase in living expenses incurred so that Plaintiff's household can maintain its normal standard of living. *See* Exhibit A at HR1053QVA (12/20), p. 1 of 2. The Policy limits that payment to "**the shortest time period required to repair or replace the premises**." *Id.* (emphasis added). Virginia law likewise limits additional living expense recovery to reasonable and necessary expenses resulting from the covered cause of loss. *Le Morzellec v. Loudoun Mut. Ins. Co.,* 2004 Va. Cir. LEXIS 218 at *8-9 (Va. Cir. Ct. 2004) (disallowing recovery for additional living expenses where delays were caused by plaintiff's construction choices and disputes with their contractor).

Cincinnati paid Plaintiff $18,000.00 per month in Additional Living Expense benefits to house Plaintiff in a rental property while the Property was repaired. *See* Exhibit N at p. 87, lines 7-25. On March 18, 2024, Cincinnati advised that Plaintiff's contractor, Loudoun Construction, had identified June 7, 2024 as the anticipated date of substantial completion, upon which Plaintiff could begin occupying the Property and Additional Living Expense payments would end. *See* Exhibit R. Cincinnati therefore concluded Additional Living Expense payments in June 2024. *See* Exhibit P at pp. 2-3.

Plaintiff cannot extend Additional Living Expense coverage beyond that period based on delays he caused or choices he made during the repair process. *See Le Morzellec*, *supra.* Plaintiff restricted Loudoun Construction's work by requiring exterior and crawl space repairs to be completed before interior repairs began, even though Plaintiff was not residing at the Property during the repairs. *See* Exhibit N at p. 54, line 19 – p. 55, line 25. Plaintiff also would not allow work to proceed or subcontractors to visit the Property without a Loudoun Construction supervisor present. *Id*. at p. 51, line 6 – p. 52, line 21. Joshua Whirley of Loudoun Construction, Plaintiff's own contractor, testified that Plaintiff did not allow them to perform work on certain days and otherwise made completion of the work impossible at times. *See* Exhibit T at p. 48, line 6 – p. 50, line 10. Plaintiff also admitted that he contributed to delays by not making necessary material selections. *See* Exhibit S.

Those Plaintiff-created delays do not expand Cincinnati's obligations under the Policy. *See Le Morzellec*, *supra.* The Policy measures Additional Living Expense coverage by the shortest time required to repair or replace the premises, not by the time ultimately required after Plaintiff restricted the contractor's work, delayed material selections, refused to sign change orders, or elected not to resume full-time occupancy. *See* Exhibit A at HR1053QVA (12/20), p. 1 of 2. The

record further confirms that Plaintiff and his wife spent multiple nights at the Property in April or May of 2024, before the June 7, 2024 substantial completion date identified by Loudoun Construction. *See* Exhibit N at p. 91, line 2 – p. 92, line 7.  At that point, the record demonstrates that the Property could be occupied (and was not uninhabitable) before the June 7, 2024 substantial completion date identified by Loudoun Construction.

Cincinnati paid Additional Living Expense benefits through the period reasonably required to repair the Property. Plaintiff's request for ten additional months of coverage seeks coverage beyond the time allowed by the Policy and is based on delays not attributable to any covered physical loss. Accordingly, Cincinnati did not breach the Policy by declining to pay additional living expense benefits beyond June 2024, and no genuine issue of material fact exists with respect to this category of damages.

In sum, Plaintiff cannot establish that Cincinnati breached the Policy by failing to pay amounts that Plaintiff is not entitled to under the Policy. Accordingly, Cincinnati is entitled to summary judgment on Plaintiff's breach of contract claim.

### C. CINCINNATI IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S DECLARATORY JUDGMENT CLAIM.

Plaintiff's declaratory judgment claim is duplicative of Plaintiff's breach of contract claim. *See* Plaintiff's Complaint (ECF No. 1) at ¶¶ 25-26.  A declaratory judgment claim that seeks resolution of legal issues that will be resolved by other causes of action serves no useful purpose and is properly dismissed.  *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 863 (E.D. Va. 2016). Accordingly, the declaratory judgment claim should be dismissed along with the breach of contract claim.

### D. CINCINNATI IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S BAD FAITH CLAIM.

21

Plaintiff's bad faith claim fails as a matter of law. Under Virginia law, an insurer acts in bad faith only where it denies coverage or refuses payment without a reasonable basis. Va. Code § 38.2-209; *CUNA Mut. Ins. Soc. v. Norman,* 237 Va. 33, 38-39 (1989). Courts evaluate bad faith under a reasonableness standard, including whether the insurer conducted a reasonable investigation, whether the evidence supported the insurer's position, and whether the coverage dispute was reasonably debatable. *Scottsdale Ins. Co. v. Glick*, 240 Va. 283, 287-88 (1990); *CUNA*, 237 Va. at 38-39. Further, because Cincinnati is presumed to have acted in good faith, Plaintiff must prove bad faith by clear and convincing evidence. *Goldstein v. Nat'l Ins. Co.*, 2008 U.S. Dist. LEXIS 58129, at *9 (W.D. Va. July 28, 2008).

The undisputed record does not support a finding of bad faith by any standard, let alone clear and convincing evidence. Cincinnati accepted coverage for the explosion loss, investigated the claim, reasonably relied on retained experts and consultants, and ultimately paid Plaintiff $965,785.09 for covered repairs to the residence, damaged personal property, and additional living expenses. *See* Exhibit F. Cincinnati retained an engineer, Miller, to evaluate the cause and extent of damage to the dwelling. *See* Exhibits B and C. Cincinnati retained building consultant Joshua Kai of Young & Associates to determine the scope of covered repairs and prepare repair estimates. *See* Exhibit D. Cincinnati also retained Enservio to assess Plaintiff's damaged personal property. *See* Exhibit P at p. 3. Cincinnati's reliance on expert findings and conclusions confirms that its coverage position was reasonable and defeats Plaintiff's claim of bad faith. *HHC Assocs. v. Assurance Co. of Am.*, 256 F. Supp. 2d 505, 510 (E.D. Va. 2003).

The only amounts Cincinnati did not pay were Plaintiff's later supplemental demands for damages that were excluded by the Policy, unsupported by the evidence, or outside the scope of coverage. As discussed in detail above, Plaintiff's additional Dwelling claim is based on alleged

22

defective workmanship by Plaintiff's own contractor, items already paid by Cincinnati, unsupported causation opinions, or other excluded causes of loss. Plaintiff's additional Personal Property claim is based on paintings discarded before Cincinnati could inspect them and furniture for which Plaintiff has not produced evidence establishing explosion-related damage. Plaintiff's additional living expense claim seeks benefits beyond the shortest time period required to repair or replace the Property. There is no evidence of record to prove by clear and convincing evidence that Cincinnati's positions on these items were unreasonable.

Plaintiff may disagree with Cincinnati's coverage determinations, but disagreement is not bad faith. Where the issue of coverage is reasonably debatable, there is no bad faith. *CUNA Mut. Ins. Soc.*, 375 S.E.2d at 727. Cincinnati maintains that it paid all covered amounts owed under the Policy. At a minimum, Cincinnati's coverage determinations were supported by the Policy language, its thorough investigation, and the opinions of its retained experts and consultants. Plaintiff therefore cannot establish that Cincinnati denied benefits or refused payment without a reasonable basis.

Plaintiff's bad faith claim also fails because a claim under § 38.2-209 cannot be maintained independent of a breach of contract claim. *REVI, LLC v. Chicago Title Ins. Co.*, 776 S.E.2d 808, 813 (Va. 2015). As demonstrated above, Cincinnati satisfied its obligations under the Policy, and Plaintiff cannot establish a breach of contract. Without a breach of the Policy, Plaintiff cannot maintain a claim for bad faith.

Accordingly, Cincinnati is entitled to summary judgment on Count Two of Plaintiff's Complaint.

## IV.   CONCLUSION

Plaintiff cannot prove any unpaid covered loss, cannot establish that Cincinnati breached the Policy, and cannot prove bad faith by clear and convincing evidence. Because no genuine issue of material fact remains for trial, Cincinnati respectfully requests that the Court enter summary judgment in its favor on all counts and dismiss the Complaint with prejudice.

Respectfully submitted,

**THE CINCINNATI INSURANCE COMPANY**

**HORST KREKSTEIN & RUNYON LLC**

By:\_\_ _____
Matthew B. Malamud, Esquire (*pro hac vice*)
610 W. Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
(484) 243-6878
(484) 351-8214 (fax)
mmalamud@hkr.law
*Attorney for Defendant,*
*The Cincinnati Insurance Company*

Dated: June 19, 2026

**SETLIFF LAW, P.C.**

By: \_\_\_\_Kevin T. Streit_____
Kevin T. Streit (VSB No. 45024)
SETLIFF LAW, P.C.
4940 Dominion Boulevard
Glen Allen, Virginia 23060
(804) 377-1260
(804) 377-1280 (facsimile)
kstreit@setlifflaw.com
*Counsel for The Cincinnati Insurance Company*

24

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete the foregoing was served on the following counsel of record by operation of the Court's ECF filing system this 19th day of June, 2026.

R. Michael Smith, Esq.
Daniel M. Cohen, Esq.
Cuneo Gilbert & Laduca, LLP
2445 M Street, N.W., Suite 740
Washington, D.C. 20037
mike@cuneolaw.com
danielc@cuneolaw.com
*Counsel for Plaintiff*

/s/ Kevin T. Streit
Kevin T. Streit (VSB No. 45024)

25